# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6379 | **DATE** | 9/10/2002 |
| **CASE TITLE** | CLINT HARRIS vs. CITY OF CHICAGO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Plaintiff's motion for a preliminary injunction is denied. Plaintiff's motion for a temporary restraining order is moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 11 2002 | |
| | Notified counsel by telephone. | | date docketed | 4 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| EF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Minute Order Form (06/97)

DOCKETED
SEP 11 2002

UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLINT HARRIS; and SANJI HARRIS by her father and next friend, CLINT HARRIS, | ) ) ) ) | |
| Plaintiff, | ) ) ) | No. 02 C 6379 HONORABLE CHARLES R. NORGLE |
| vs. | ) ) | |
| CITY OF CHICAGO; and RICHARD M. DALEY, Mayor, | ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge:

Before the court is Plaintiffs' motion for a preliminary injunction seeking to enjoin a planned reading of a prayer during the City of Chicago's one year anniversary commemoration ceremony of September 11, 2001. For the following reasons, the motion is denied.

**I. BACKGROUND**

Terrorists struck the United States of America on September 11, 2001, a warm late summer morning, as millions of Americans went about their routine activities. Millions viewed televison and listened to the radio as the events unfolded and information became available. On September 11, 2001, our country was forever changed by the events at the World Trade Center, the Pentagon, and a solitary field in Pennsylvania. This day is etched in the collective memory of the country, if the not the world, and continues to evoke strong patriotic, emotional, and psychological responses. As the country approaches the one year anniversary of these tragic events, a universal call has arisen to hold special ceremonies to commemorate this day and the approximately three thousand human

beings who perished or sacrificed their lives. In response, villages, towns, and cities across the nation have planned memorial ceremonies, including the City of Chicago.

The Mayor's Office and the Mayor's Office of Special Events have planned a memorial ceremony to take place at the Civic Center Plaza, or as most Chicagoans refer to it, Daley Plaza. Daley Plaza, located in downtown Chicago, encompasses an open area of roughly half a city block. The Plaza is bordered on the East by Dearborn Street, on the South by Washington Street, on the West by Clark Street, and on the North by the Daley Center. The Daley Center houses many of the court rooms of the Circuit Court of Cook County as well as offices of the Clerk of Cook County, the State's Attorneys Office of Cook County, and the Public Defender's Office of Cook County. Located across Clark Street, west of Daley Plaza, is a building housing both Cook County and City offices, including Mayor Daley's office. Only one object can be found in Daley Plaza: the Chicago Picasso. The Picasso is an unnamed, unpainted, three-dimensional, cubist sculpture made of corrosive tensile steel standing 50 feet tall and weighing 162 tons.[1] Beneath or near its Rorschach shadow, the ceremony is to take place.

The ceremony, scheduled for 11:45 AM on September 11, 2002, is a privately funded event. Mr. Gary Sinise, a prominent Chicagoan, is scheduled to be the master of ceremonies. The ceremony will begin with a prelude of secular music selections written by Aaron Copland, Georges Bizet, Leonard Bernstein, and Johann Sebastian Bach. Mr. Sinise will then read a welcome to the

---

[1] Pablo Picasso (1881-1973) is the noted Spanish artist who is widely acknowledged to be one of the most important artists of the 20th century. Though Spanish by birth, Picasso lived most of his life in France. More interestingly, Picasso had affiliations with the French Communist Party. The tenants of communism do not acknowledge or accept any form of religion. The life of Picasso is hardly that of a religious zealot or an advocate of church-state amalgamation. This particular sculpture is a work of contemporary art designed by the artist to evoke individual response. No reasonable person could view the Picasso as having religious connotations.

attendees. Following the welcoming words, there will be three minutes of reflection, signifying the three sites where lives were lost during the attacks: New York City, Washington D.C., and western Pennsylvania. During the reflection, bells will ring across the city. After the reflection, the Bank One Choir will sing "Amazing Grace," there will be selected readings of works by William Wodsworth and Maya Angelou, and an additional musical selection. Then, the "Chicago Prayer of Unity, Remembrance and Hope" will be read. Following the prayer, there will be a reading of selected portions from Theodore Roosevelt's inaugural address and a rendition of "America the Beautiful." Mr. Sinise will make closing remarks and the ceremony will end with musical selections from Johann Sebastian Bach and Georg Friedrich Handel.

The interdenominational prayer will be distributed to attendees of the memorial ceremony, as well as at places of worship across the city. Mayor Daley has asked Chicagoans to attend the ceremony. However, Mayor Daley has asked that children remain in school and that the schools "suspend their normal activities at noon so students can share in the observance."

Plaintiffs, Clint Harris and Sanji Harris ("Harris")[2], by her father and next friend Clint Harris, have filed a complaint for declaratory and injunctive relief against Defendants, City of Chicago ("City") and Mayor Richard M. Daley ("the Mayor"). Harris' pleadings seek to enjoin the City and the Mayor from holding the memorial ceremony on September 11, 2002 because it is in violation

---

[2] Since Clint Harris is acting as the representative of his six year-old daughter Sanji, the court will refer to both Plaintiffs simply as "Harris." As an aside, the court notes that Harris seeks to spare his daughter the peril of ostracism if she refuses to participate in a religious prayer in school. (Mem., pg. 14.) The complaint does not name as a defendant the Chicago Board of Education, which is the entity with authority to regulate such matters. In any event, Harris presents absolutely no evidence that the City plans to force school children to participate in school prayer. The City affirmatively states that the prayer is not to be distributed to schools, and children will not be exposed to religious coercion, ostracism, or any other form of improper action.

of 42 U.S.C. § 1983. Specifically, Harris claims that any reading of the "Chicago Prayer of Hope, Unity and Remembrance," at that ceremony by anyone is in violation of the Establishment Clause of the Constitution of the United States. At the hearing on this matter, Harris clarified that he is not seeking to enjoin the entire ceremony, but is only seeking to stop the prayer from being read.

Harris' motion seeks both a temporary restraining order and a preliminary injunction. The court has held a hearing on the matter, and the City has responded in writing with accompanying affidavits and exhibits. The court has heard the arguments of counsel for both parties, and the testimony of Harris. Accordingly, the court treats the matter as a preliminary injunction rather than a temporary restraining order.

## II. DISCUSSION

### A. Preliminary Injunction Standards:

A preliminary injunction is an extraordinary remedy, most often employed to preserve the relative positions of the parties until a trial on the merits can be held. For a preliminary injunction to issue, a plaintiff must demonstrate: (1) some likelihood of success on the merits, see Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1114-15 (7th Cir.1997), and (2) "'an inadequate remedy at law and irreparable harm if preliminary relief is denied.'" Brownsburg Area Patrons Affecting Change v. Baldwin, 137 F.3d 503, 507 (7th Cir.1998) (quoting TMT North America, Inc. v. Magic Touch GmbH, 124 F.3d 876, 881 (7th Cir.1997)). If the plaintiff fails to establish a likelihood of success, an inadequate remedy at law, or irreparable harm, then the court's analysis "ends and the preliminary injunction should not be issued." Adams v. City of Chicago, 135 F.3d 1150, 1154 (7th Cir.1998). On the other hand, if the plaintiff demonstrates these elements, "then the court considers the irreparable harm to [the defendant] if preliminary relief is granted as

balanced against the irreparable harm to [the plaintiff] if preliminary relief is denied, and the public interests involved." Baldwin, 137 F.3d at 507 (citations omitted); see also Boucher v. School Bd. of Greenfield, 134 F.3d 821, 824 (7th Cir.1998). The court uses a "sliding scale" approach to this balancing test; that is, "the stronger the case on the merits, the less irreparable harm must be shown." Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1172 (7th Cir.1997) (citations omitted). "The balancing of the imponderables involved in the decision whether to grant or deny a preliminary injunction is a task calling for a judgment based on the particulars of the individual case." Planned Parenthood of Wis. v. Doyle, 162 F.3d 463, 465 (7th Cir. 1998). With these principles in mind, the court examines Harris' motion.

## B. Harris Fails to Demonstrate a Likelihood of Success on the Merits:

Harris complains that the upcoming September 11th ceremony "smacks of a Jacobinesque attempt to establish a civic religion." (Mot., pg. 2.) The court is unpersuaded.

The purpose of the Establishment Clause is "'to prevent, as far as possible, the intrusion of either [the church or the state] into the precincts of the other.'" Lynch v. Donnelly, 104 S. Ct. 1355, 1358-59 (1984) (quoting Lemon v. Kurtzman, 403 U.S. 602, 614 (1971)). But the Supreme Court has also recognized that total separation of church and state "'is not possible in an absolute sense.'" Lynch, 104 S. Ct. at 1359 (quoting Lemon, 403 U.S. at 614). Governing entities face the often difficult task of reconciling the tension between preventing the intrusion of the church or state upon the other, and the practical reality that complete separation of the two is not possible. Lynch, 104 S. Ct. at 1359; see also DeBoer v. Village of Oak Park, 267 F.3d 558, 569-70 (7th Cir. 2001) (discussing the long history of religious references in governmental activities and noting that

"prayers and the invocation of divine guidance have been accepted as part of American political discourse throughout the history of this Republic.").

To determine whether a governmental action violates the Establishment Clause, the court applies what is commonly called the Lemon test. See Indiana Civil Liberties Union v. O'Bannon, 259 F.3d 766, 770 (7th Cir. 2001) (applying the analysis laid out in Lemon v. Kurtzman, 403 U.S. 602 (1971)). Under the Lemon test, governmental action will violate the Establishment clause if: (1) the action does not have a secular purpose; (2) the primary effect of the action is to advance or inhibit religion; or (3) the action fosters excessive entanglement with religion. Indiana Civil Liberties Union, 259 F.3d at 770. Harris claims that the City's planned ceremony violates each prong of the Lemon test.

**1. Secular Purpose:**

Harris submits that the ceremony taking place in Daley Plaza, near the seat of the City's government with religious leaders in attendance, shows that the ceremonies are religious in nature. To succeed on this point, Harris must demonstrate that the City's actual purpose in planning the ceremony is to advance religion. See Indiana Civil Liberties Union, 259 F.3d at 770. Harris' motion utterly fails to carry this burden. The planned September 11th memorial has a plainly secular purpose. Nearly one year ago, the nation was viciously attacked and thousands of innocent people died. These attacks caused immeasurable loss and mourning for persons all across the country. Since the attacks, the United States and its allies have been engaged in worldwide efforts against terrorism, involving an untold number of military, law enforcement, and intelligence personnel. Ceremonies to mark the events and honor those who died are an important part of the nation's collective grieving. The ceremonies help with the healing process of the nation and those who

suffered tragic individual losses. The ceremonies allow people to show their patriotism and national pride, and also demonstrate the nation's solidarity and support for the ongoing actions to eliminate terrorism. There is an undeniable religious aspect to ceremonies such as this, for people often seek solace in religion after events as horrific as September 11th. See e.g. 61 Fed. Reg. 16035 (President Clinton's proclamation declaring April 19, 1996 as a National Day of Remembrance of the Oklahoma City bombing). These religious aspects, however, occur separately and apart from any governmental action.

Harris overlooks all secular aspects of the ceremony, and focuses primarily on the planned prayer. Harris argues as if the City is staging the entire event as a pretext for government sponsored religion. The argument is hopelessly myopic and fails to grasp the solemnity of the day. The City's allowance of an interdenominational prayer as part of the memorial ceremony falls well short of making the entire ceremony non-secular.

2. **Advancement of Religion:**

Next, Harris submits that the planned ceremonies will have the effect of advancing religion. Again, the court is unpersuaded. The question is whether a reasonable person would believe that the planned ceremony amounts to an endorsement of religion. See Indiana Civil Liberties Union, 259 F.3d at 772. To answer this question, the court examines, *inter alia*, the context of the planned ceremonies. Id. One of the factors the court must consider is whether there is an element of government coercion of religion. See e.g. Tanford v. Brand, 104 F.3d 982, 985-86 (7th Cir. 1997) (distinguishing Lee v. Weisman, 505 U.S. 577 (1992)). "A religious service under government auspices necessarily conveys the message of approval or endorsement." Doe v. Village of Crestwood, 917 F.2d at 1478. Generally, such a service would run afoul of the Establishment Clause

7

even if it occurred in conjunction with secular activities. Id. But, the context of governmental involvement in religious messages is important, and indeed, cannot be overstated in this case. See id. (analyzing Allegheny County v. ACLU 492 U.S. 573 (1989) and Lynch, 465 U.S. 668). Harris' argument on this point is meritless.

As discussed above, the context of the ceremonies is to commemorate an historic day, not to proselytize. Harris ignores all secular aspects of the planned ceremony. Harris makes no mention of the secular readings and music. Harris even ignores the fact that an entertainment personality, Gary Sinise, is hosting the event, and that other actors will be performing the readings. Mr. Sinise, for all of his accomplishments, is not known as a religious leader.[3]

Harris asserts that the Mayor requested that houses of worship remain open. The argument is incomplete, as it fails to present a Constitutional violation. The request is not a command, nor is it an advancement of religion. See Tanford, 104 F.3d at 985-86. The request is simply an acknowledgment that people have strong feelings about the day and may seek religious guidance. Harris fails to demonstrate that the houses of worship would be otherwise unavailable had the Mayor not made the request. Houses of worship are routinely open during daytime hours. No reasonable person could see the Mayor's request as an advancement of religion.

Harris also presents no evidence that the City is sponsoring the prayer. The City has presented affidavits and exhibits demonstrating that the prayer was created by a group of local religious leaders, all of whom are private persons. The City has not spent public money on the preparation of the prayer, and presents evidence that the printing and distribution costs were borne

---

[3] Mr. Sinise is a well known actor, and is also a co-founder of the Steppenwolf Theater Company located on the North side of Chicago. Mr. Sinise's film credits include works such as *Forrest Gump*, *Apollo 13* and *Snake Eyes*.

8

by private parties. The printed version of the prayer will not bear any marks associated with the City, such as an official seal, or other official mark. Persons distributing the printed prayer will be private volunteer citizens, who will not be wearing anything that identifies them as City officials or employees. Also, the script for Mr. Sinise does not include a request that the audience participate in the prayer or recite the prayer. The prayer itself contains seven short passages of expressions of solidarity, sorrow, anger, mourning, determination, renouncement of bigotry, encouragement, and a plea for unity and hope. The prayer mentions God, but the message is also secular, as it recognizes the tragedy the nation has suffered and expresses the desire to move forward to a better future. Given the lack of official involvement in the creation and distribution of the prayer, as well as the lack of any evidence of coerced religious expression, the prayer falls far short of a government sponsored religious service that would violate the Establishment Clause.

### 3. Excessive Entanglement:

Harris' final argument is that the ceremony is an excessive entanglement of government and religion. The Establishment Clause prohibits an excessive entanglement of government and religion, which is necessarily a question of the kind and degree of governmental action. See Lynch, 104 S. Ct. at 1365; Cohen v. City of des Plaines, 8 F.3d 484, 493 (7th Cir. 1993). While the government cannot sponsor religious ceremonies, it also "may not close its public forums to religious practice by private parties." Doe v. Village of Crestwood, 917 F.2d 1476, 1478 (7th Cir. 1990) (citing Widmar v. Vincent, 454 U.S. 263 (1981); Fowler v. Rhode Island, 345 U.S. 67 (1953)); see also Doe v. Small, 964 F.2d 611, 617 (7th Cir. 1992) ("It is well settled that private religious speech is protected under the Free Speech Clause of the First Amendment."). "'[T]here is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private*

speech endorsing religion, which the Free Speech and Free Exercise Clauses protect.'" Doe v. Small, 964 F.2d at 617 (quoting Board of Educ. of Westside Comm. Sch.'s v. Mergens, 496 U.S. 226 (1990) (emphasis added in Doe v. Small)). The government is obligated "not to discriminate against religious speech in circumstances in which secular speech would be allowed. . . ." Doe v. Village of Crestwood, 917 F.2d at 1478; see also DeBoer, 267 F.3d at 571 (holding that a local government discriminated against a group because of their religious beliefs in violation of the First Amendment when the government prohibited the group from using the Village Hall as part of National Prayer Day). At the same time, a local government cannot, consistent with the establishment clause, sponsor a religious service. Doe v. Village of Crestwood, 917 F.2d at 1478 ("Owning a public forum is one thing, sponsoring a mass is quite another.").

Here, the reading of the prayer, ringing of bells, and location of the ceremony do not constitute excessive entanglement of government and religion. First, the City could not forbid the reading of the prayer, as that would violate the Free Expression rights of those who wish to pray. Harris presents no evidence that the prayer was written by the City or the Mayor, or that the City is otherwise impermissibly conducting religious services, or ordering that the prayer be distributed to area schools and churches. Compare Doe v. Village of Crestwood, 917 F.2d at 1478-79 (upholding a factual finding that a local government was conducting a religious mass). Indeed, the evidence is exactly the opposite. The prayer was created and funded by private citizens. No public money has been, nor will be, spent on the prayer. The only involvement the City had with the prayer was to set time constraints on its length, and request that the content of the prayer reflect the overall somber theme of the ceremony. The City has not mandated specific language to be included in or excluded from the prayer. If the authors of the prayer wish to distribute copies to area churches, it is their right

to do so. There is no evidence that the City is involved in any such activity. The facts conclusively demonstrate that the prayer is the product of private citizens and not the City. In the context of the day, the City will not violate the Establishment Clause by permitting the privately prepared prayer to be read as part of a somber, and largely secular ceremony.

Harris also complains of the planned bell ringing as having religious overtones. Ringing of bells is not a *per se* religious activity. Bell ringing is long associated with solemn events, and is not an excessive entanglement of government and religion. See e.g. 51 Fed. Reg. 24507 (President Regan proclaiming July 3, 1986 as "Let Freedom Ring Day" to commemorate the restoration of the Statue of Liberty and encouraging the ringing of bells in celebration).

Finally, the place of the ceremony, near the seat of City government, is not evidence of excessive entanglement. The City is obligated to open public forums, such as the Plaza, to persons wishing to use them, and cannot forbid their use because of religious content. See e.g. DeBoer, 267 F.3d at 571 (finding a violation of the Establishment Clause in refusal to permit the Village Hall to be used in National Prayer Day observances).

### III. CONCLUSION

The City has publicized an open invitation not only to the three million people who live in Chicago, but to all who would with good will on this late summer September morning commemorate the loss of over three thousand human beings. Taking into account the totality of the circumstances, the arrangements and plans do not violate the Establishment Clause of the United States Constitution. For the foregoing reasons, the court denies Harris' motion for a preliminary injunction. IT IS SO ORDERED.

ENTER:

*Charles R. Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 9-10-02